IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                           )
AMERICAN CIVIL LIBERTIES UNION,  )
                                           )
     Plaintiff,                          )
                                           )
v.                                            )   Case No. 1:20-cv-03204-RDM
                                           )
U.S. DEPARTMENT OF HOMELAND     )
     SECURITY, and                )
                                           )
U.S. IMMIGRATION AND CUSTOMS    )
     ENFORCEMENT,                 )
                                           )
     Defendants.                       )
                                           )
_____)

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

ARGUMENT ..................................................................................................................................2

THE PRIVACY OFFICE PROPERLY FORWARDED PLAINTIFF'S FOIA REQUEST
TO ICE PURSUANT TO 6 C.F.R. § 5.3(a)(2) ................................................................................2

CONCLUSION……………………………………………………………………………………9

## TABLE OF AUTHORITIES

**CASES**

*Amiri v. National Science Foundation*,
 No. 21-5241, 2022 WL 1279740 (April 28, 2022) ............................................................. 6, 8

*Bartko v. DOJ,*
 No. 13-1135 (JEB), 2014 WL 12787219 (D.D.C. Aug. 25, 2014) ......................................... 6

*Campbell v. DOJ*,
 164 F.3d 20 (D.C. Cir. 1998) .................................................................................................. 5

*Coleman v. DEA*,
 134 F. Supp. 3d 294 (D.D.C. 2015) ........................................................................................ 8

*Landmark Legal Found. v. EPA*,
 272 F. Supp. 2d 59 (D.D.C. 2003) .......................................................................................... 6

*Lawyers' Committee for Civil Rights Under the Law v. U.S. Department of Justice*,
 No. 18-cv-167, 2020 WL 7319365 (D.D.C. Ocr. 16, 2020) ................................................... 8

*Mobley v. CIA*,
 806 F.3d 568 (D.C. Cir. 2015) ................................................................................................ 3

*Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Housing and Urban Dev.*,
 19 F. Supp. 3d 1 (D.D.C. 2013) .......................................................................................... 8, 9

*New Orleans Workers' Ctr. for Racial Justice v. ICE*,
 373 F. Supp. 3d 16 (D.D.C. 2019) .......................................................................................... 8

*Nurse v. Sec'y of the Air Force*,
 231 F. Supp. 2d 323 (D.D.C. 2002) ........................................................................................ 7

*Stein v. CIA*,
 454 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................................ 2, 3

**REGULATIONS**

6 C.F.R. § 5.3 .................................................................................................................... *passim*

6 C.F.R. § 5.4 ........................................................................................................................ 3, 4

28 C.F.R. § 16.3 ........................................................................................................................ 2

6 C.F.R. Pt. 5 ............................................................................................................................ 6

**OTHER AUTHORITIES**

https://www.dhs.gov/foia-contact-information ........................................................................ 6

**INTRODUCTION**

Defendants have shown that the Department of Homeland Security ("DHS") Privacy Office made a reasonable determination, pursuant to 6 C.F.R. § 5.3(a)(2), to forward plaintiff's Freedom of Information Act ("FOIA") request to U.S. Immigration and Customs Enforcement ("ICE") as the component "most likely" to maintain responsive records. *See* Defendants' Memorandum in Support of Motion for Partial Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment (ECF 41-1). That determination was based, *inter alia*, on the terms of the request for records regarding "ICE['s] response to the COVID-19 pandemic," plaintiff's clarification of the request, the timing of the request, and the fact that plaintiff submitted the request directly to ICE as well as the Privacy Office. *See id.*

In its reply brief, plaintiff argues that the Privacy Office's "search" was inadequate because it did not include records from DHS's Office of the Inspector General ("OIG"). *See* Reply in Support of Plaintiff's Motion for Partial Summary Judgment and Opposition to Defendants' Cross-motion for Partial Summary Judgment [ECF 43]. Plaintiff's argument conflates two separate regulatory provisions – 6 C.F.R. § 5.3(a)(2), which requires the Privacy Office to "forward" requests to the component(s) "most likely" to maintain responsive records, and 6 C.F.R. § 5.3(a)(1), which concerns the submission of a FOIA request to the proper DHS component and the adequacy of search by that component. The sole issue before the Court is whether, upon receipt of plaintiff's FOIA request, the Privacy Office made a reasonable determination to forward the request to ICE pursuant to 6 C.F.R. § 5.3(a)(2) for the purpose of conducting a search. Plaintiff's attempt to frame the issue as an adequacy-of-search question is fundamentally off point and falls under 6 C.F.R. § 5.3(a)(1). Because the Privacy Office's determination to forward the request only to ICE was sound in all respects, defendant's motion

1

for partial summary judgment should be granted, and plaintiff's motion for partial summary judgment should be denied.[1]

## ARGUMENT

## THE PRIVACY OFFICE PROPERLY FORWARDED PLAINTIFF'S FOIA REQUEST TO ICE PURSUANT TO 6 C.F.R. § 5.3(a)(2)

The premise of plaintiff's argument is that since OIG records were brought to the Privacy Office's attention "during the pendency of its FOIA search," Pl. Reply at 1, DHS should be required to "search for and produce in this proceeding responsive records from the DHS Inspector General." Pl. Reply at 2. This argument "mak[es] a false equivalence between an agency's referral of a FOIA request to a specific component and a search of . . . records systems within an agency component." *Stein v. CIA*, 454 F. Supp. 3d 1, 25 n.9 (D.D.C. 2020). In both *Stein* and the instant case, the applicable regulations (in this case, 6 C.F.R. § 5.3(a)(2))[2]

---

[1]  Defendants did not respond to plaintiff's statement of material facts as to which there is no genuine issue, *see* Reply in Support of Plaintiff's Motion for Partial Summary Judgment and Opposition to Defendants' Cross-Motion for Partial Summary Judgment (ECF 43) ("Pl. Reply") at 2 n.1, because to the extent defendants dispute any of the facts in plaintiff's statement, those facts are either not material, or they present no "genuine issue[s] necessary to be litigated." *See* LCvR 7(h)(1); Standing Order at (d)(i) (stating that party opposing motion for summary judgment must "enumerate[e] all material facts which the party contends are genuinely disputed and thus require trial"). For example, defendants dispute plaintiff's representation of facts in paragraph 6 of the statement as reflected in certain documents cited therein and refer the Court to Exhibits 4 and 5 (ECF 40-8, 40-9) for a complete and accurate statement of their contents. However, plaintiff's mischaracterization does not present a genuine issue necessary to be litigated. To take another example, while defendants dispute plaintiff's characterization in paragraph 8 of its statement, to the effect that "DHS still had not determined if it would comply with the ACLU's FOIA request . . . .," ECF 40-1 ¶ 8, the alleged facts in that paragraph are not material nor do they present a genuine issue necessary to be litigated.

[2]  The DOJ regulations in *Stein* (28 C.F.R. §§ 16.3(a)(1) and (a)(2)) are similar to the DHS regulatory scheme in 6 C.F.R. §§ 5.3(a)(1) and (a)(2). That is, Subsection (a)(1) of both Departments' regulations provides for decentralized FOIA programs across each Department's components, while Subsection (a)(2) permits a requester to send the request to a centralized office within the respective Department for the office to receive and forward requests to the component(s) most likely to have records, but not for that office to conduct a search itself.

specifically instructed the agency, "upon receiving a FOIA request, to direct the request to the *agency component* 'most likely' to possess responsive records . . . ." *Id.* And as the court in *Stein* observed, "[w]hile the D.C. Circuit has held that only searching the *records systems* 'most likely' to have responsive materials is inadequate, *Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015) . . ., it has not held that only referring to the *component* 'most likely' to have responsive materials is inadequate." *Id.*

The requirements for making FOIA requests and DHS's responsibility for responding to requests are described in DHS's regulations at 6 C.F.R. §§ 5.3 and 5.4, respectively. DHS's obligations under Section § 5.3(a)(1) for components and certain Headquarters offices to have FOIA Offices to receive requests, conduct adequate searches, and process records; its obligations under Section 5.3(a)(2) for a designated centralized office within DHS (*i.e.*, the Privacy Office) to "forward" FOIA requests to those components most likely to have records; and its obligations to make "referrals" to separate components under Section 5.4(d), are set forth in separate regulatory sections because they involve different responsibilities. Supplemental Declaration of Catrina Pavlik-Keenan ("Supp. P-K Dec.") ¶ 2.

DHS's general responsibility for conducting adequate searches for records and processing them arises from Section 5.3(a)(1), which concerns the submission of a FOIA request to the proper component. 6 C.F.R. § 5.3(a)(1); Supp. P-K Dec. ¶ 3. This responsibility belongs to all DHS components, including the DHS Privacy Office and the Headquarters offices for which the Privacy Office provides FOIA services. *See* Declaration of Catrina Pavlik-Keenan (ECF 41-2) ("P-K Dec.) ¶ 3. Once a DHS component receives a request, it is responsible for conducting a search of records in its possession. 6 C.F.R. § 5.4(a); Supp. P-K Dec. ¶ 3. If, in the course of its search, the component discovers that other offices or personnel within that same component may

3

have responsive records, the component is obligated to task those personnel and offices to conduct a search as well, to ensure that the search is adequate. Supp. P-K Dec. ¶ 3.

In contrast, if, in the course of its search, a DHS component discovers records that originated with a second DHS component, the original component may "refer" those records to the second component for processing. *See* 6 C.F.R. § 5.4(d)(3); Supp. P-K Dec. ¶ 4. The original component may also respond to the request itself after consulting or coordinating with the second component. *See* § 5.4(d)(1), (2); Supp. P-K Dec. ¶ 4. However, the regulations do *not* provide for the original component to "forward" the FOIA request to the second component to initiate a *new* search on the basis of the search results. Supp. P-K Dec. ¶ 4.

The separate obligation of the Privacy Office to "forward" a request to the component(s) that it determines to be "most likely" to maintain responsive records, for the purpose of conducting an initial search, is addressed in Section 5.3(a)(2). Supp. P-K Dec. ¶ 5. That obligation only applies to requests submitted to the Privacy Office, as the designated centralized office for DHS under Section 5.3(a)(2). *Id*. After the Privacy Office receives a request, it will forward the request to that other component for an initial search only if it determines that the component is "most likely" to maintain responsive records. *Id*. The Privacy Office's determination is based on the terms of the request itself and any follow-up communications, if the Privacy Office reaches out to the requester with questions about the intent or scope of the request. *Id*. Once the Privacy Office has sufficient information to make its determination about which component is "most likely" to maintain responsive records, which occurred here once plaintiff clarified its request in June 2020, *see* ECF 40-9, the Privacy Office forwards the request to the appropriate component. *Id*. The component to which the request is forwarded, in this case, ICE, then initiates a search for responsive records within that component. *Id*.

4

Whereas the determination of where to expand a search within a given DHS component under Section 5.3(a)(1) may be affected by the results of a previous search conducted by that component, the Privacy Office's determination of which component is "most likely" to maintain responsive records under Section 5.3(a)(2) is based upon the terms of the request itself and not the results of subsequently conducted searches. *Id.* ¶ 6. Hence, in connection with plaintiff's FOIA request, there is no provision in DHS's FOIA regulations for the Privacy Office to forward plaintiff's request to the Office of the Inspector General for an initial search, given the Privacy Office's determination that ICE was the component most likely to maintain responsive records. *Id.*

Plaintiff's citation to *Campbell v. DOJ*, 164 F.3d 20 (D.C. Cir. 1998), *see* Pl. Reply at 1, reflects plaintiff's failure to recognize the distinction between a search under 6 C.F.R. § 5.3(a)(1), and the forwarding of a request under 6 C.F.R. § 5.3(a)(2). *Campbell* involved a challenge to the adequacy of the search alleging that the agency should have expanded its search when it discovered information suggesting the existence of documents in other records systems. *Campbell*, 164 F.3d at 27-28. In contrast, the issue to be decided here is whether the Privacy Office properly forwarded plaintiff's FOIA request to ICE as the component "most likely" to maintain responsive records, pursuant to 6 C.F.R. § 5.3(a)(2). That determination is based on the language of the request and communications between the requester and the Privacy Office before the Privacy Office makes a determination regarding which component is "most likely to maintain the records that are sought." *See* Supp. P-K Dec. ¶ 5. Hence, in connection with the forwarding of plaintiff's FOIA request, none of the subsequent OIG reports, complaint allegations, congressional inquiries, or discussions in litigation could have had any bearing on the Privacy Office's determination.

5

Plaintiff fails to answer a simple question: if plaintiff wanted OIG records at the time it submitted its FOIA request, why did it not direct its request to OIG, as the regulations indicate it should, and as it directed its request to ICE?  *See* 6 C.F.R. § 5.3(a)(1); *id.* 6 C.F.R. Pt. 5, Subpt. A, App. I[3]; *Bartko v. DOJ,* No. 13-1135 (JEB), 2014 WL 12787219, at *2 (D.D.C. Aug. 25, 2014) (noting that "Plaintiff – clearly a sophisticated FOIA litigant . . . never explains why he did not specify particular components in his request if that is who he believed possessed relevant documents").  In this regard, plaintiff fails even to mention, let alone address, the D.C. Circuit's opinion in *Amiri v. National Science Foundation*, No. 21-5241, 2022 WL 1279740 (April 28, 2022), which held that a FOIA requester was not entitled to an OIG response where the request was not sent to OIG, as directed by a regulation comparable to 6 C.F.R. § 5.3.  If OIG were a clear target of plaintiff's request, there was no reason for plaintiff to have sent its request to the Privacy Office (which does not serve as OIG's FOIA Office) and ICE alone.

And the most likely answer to this question is that the scope of plaintiff's initial request did not include OIG records: not until after it received responsive documents from ICE and the COVID-19 situation had evolved did plaintiff determine it wanted OIG records as well.  *See* Pl. Reply at 11 (conceding that the "pandemic was novel and rapidly evolving").  It is in direct contravention of regulatory requirements to hold the Privacy Office responsible for having foresight that plaintiff itself lacked.  *See Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) ("an agency processing a FOIA request is not required to divine a requester's

---

[3]     *See* https://www.dhs.gov/foia-contact-information.

6

intent"); *Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d 323, 330 (D.D.C. 2002) ("agency is not required to exercise clairvoyant capabilities to determine the nature of the plaintiff's request").[4]

Plaintiff did not advise the Privacy Office that OIG was a potential custodian of records until several months into litigation. Plaintiff offers no excuse for failing to alert the Privacy Office that it was seeking OIG-related records either when it submitted its request or during the June 2020 communications shortly afterward, assuming plaintiff actually was requesting OIG records at that time. During the administrative phase, plaintiff was aware that the Privacy Office was "coordinating a search with ICE." ECF 30-1 at 3. If plaintiff believed other components were most likely to have responsive records, it should not have delayed six months after submitting its request to bring that fact to the Privacy Office's attention.

Plaintiff asserts that it alerted the Privacy Office that it wanted OIG records "before the DHS had commenced its search." Pl. Reply at 1. But notification "before the search" is not the applicable standard. The standard that applies to the question at issue is whether, based on the Privacy Office's review of the language of the request (which did *not* indicate that OIG records were sought), its request for clarification of plaintiff's overly broad request shortly after receiving it, and its institutional knowledge, the Privacy Office was reasonable in forwarding its request to ICE pursuant to 6 C.F.R. § 5.3(a)(2). In any event, the reason the Privacy Office had not begun a search is that it was coordinating with ICE as the component "most likely" to maintain responsive records and therefore responsible for conducting the search. *See* P-K- Dec. (ECF 41-2) ¶¶ 7, 9. Until plaintiff raised the issue in January 2021, months after litigation

---

[4] Contrary to plaintiff's assertion, Pl. Reply at 5, DHS was not "indisputably on notice that responsive records were held by the DHS Inspector General. *See* Defendants' Memorandum in Support of Motion for Partial Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment at 6-13, 17-20.

7

commenced, the Privacy Office itself would have had no reason to consider conducting a search, nor was it required to conduct one.

Plaintiff argues that the Privacy Office is required to follow leads that emerge during the course of a search. Pl. Reply at 4. But again, the scope of search is not at issue here, because the matter to be decided is whether the Privacy Office properly forwarded plaintiff's request to ICE and not to OIG pursuant to Section 5.3(a)(2), for the purpose of conducting an initial search. The cases plaintiff cites in support of its argument are inapplicable. *See* Pl. Reply at 4-5. In *Lawyers' Committee for Civil Rights Under the Law v. U.S. Department of Justice*, No. 18-cv-167, 2020 WL 7319365, slip op. at 18 (D.D.C. Oct. 16, 2020), for example, unlike the present case, the request at issue "clearly defined the documents it sought." *Id.* at *17. Despite the fact that the requester had identified certain individuals as likely to have responsive records, and the components that employed them were also identifiable potential custodians, the Privacy Office failed to forward the request to either. *Id.* at 18. In contrast, plaintiff's request neither clearly defines any OIG records nor identifies OIG as a "most likely" potential custodian.

Plaintiff's reliance on the remaining cases it cites, *see* Pl. Reply at 4-5, is equally misplaced, because those cases all involve challenges to the scope of search under 6 C.F.R. § 5.3(a)(1), whereas the issue here is the reasonableness of the Privacy Office's determination about where to forward plaintiff's request as an initial matter pursuant to Section 5.3(a)(2). *See New Orleans Workers' Ctr. for Racial Justice v. ICE*, 373 F. Supp. 3d 16, 37 (D.D.C. 2019) (finding ICE's search inadequate where not all offices and systems that would maintain responsive records had been searched); *Coleman v. DEA*, 134 F. Supp. 3d 294, 302 (D.D.C. 2015) (finding that agency should have expanded its initial search to include other offices where "clear leads" indicated those offices should have been searched); *Neighborhood Assistance Corp.*

8

*of Am. v. U.S. Dep't of Housing and Urban Dev.*, 19 F. Supp. 3d 1, 10 (D.D.C. 2013) (requiring agency to broaden its search in view of "obvious leads" pointing to additional sources that were likely to turn up the information requested). This case would present an analogous situation only if, for example, while searching a DHS Headquarters office pursuant to 6 C.F.R. § 5.3(a)(1), the Privacy Office learned that a second DHS Headquarters office under the Privacy Office's FOIA tasking responsibility maintained responsive records, thereby requiring the Privacy Office's search to be expanded to include the Headquarters second office to ensure the adequacy of the search. *See* Supp. P-K Dec. ¶ 3. But that is not the situation before the Court.

Finally, plaintiff claims that the volume of responsive records and scope of search would not impose an undue burden on the Privacy Office. Pl. Reply at 20. Again, this is a red herring. The burden here arises, not from the volume of records potentially recovered from an OIG search, but rather, from bypassing regulatory requirements and the administrative process. When presented with poorly defined requests like plaintiff's, the Privacy Office could nevertheless be held responsible for failing to divine a requester's intent and hence might preemptively forward requests to other equally overburdened components that are not necessarily likely custodians. P-K Dec. (ECF 41-2) ¶ 28. At the same time, FOIA requesters like plaintiff will be able to declare their hidden or modified intentions for the first time in litigation, inserting their endlessly proliferating claims into the judicial process rather than resolving them administratively. *Id.* ¶ 29.

## CONCLUSION

For the foregoing reasons, in addition to this stated in defendants' motion for partial summary judgment, defendants' motion should be granted.

9

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

**/s/ Lisa A. Olson**
LISA A. OLSON
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street, N.W., Room 12200
Washington, D.C. 20005
Telephone: (202) 514-5633
Telefacsimile: (202) 616-8470
E-mail: lisa.olson@usdoj.gov

Dated: July 12, 2022                                          Counsel for Defendants

10